## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**UNITED STATES OF AMERICA**                         **CRIMINAL ACTION**

**VERSUS**                                                            **NO. 11-107**

**EVANS LEWIS, ET AL.**                                   **SECTION: "G" (1)**


## ORDER AND REASONS

     This case involves an alleged heroin-distribution conspiracy. Before the Court is Defendant Evans Lewis's Motion to Sever,[1] wherein he requests severance from the trial of co-defendant Gregory Stewart. With the Court's permission, Defendant Stewart has adopted the motion.[2] The Court has considered the parties' filings, the oral arguments presented at a hearing on September 26, 2013, the record, and the applicable law. For the reasons that follow, the Court will grant the motion.

## I. Background

     On January 19, 2012, a federal grand jury in the Eastern District of Louisiana issued a Fourth Superseding Indictment in this drug-conspiracy case.[3] The Fourth Superseding Indictment charged nine defendants, alleging varying roles in an alleged conspiracy to posses with intent to distribute heroin.[4] Of the nine defendants charged in the Fourth Superseding Indictment,[5] only Terrioues

---

[1] Rec. Doc. 510.

[2] Rec. Doc. 522.

[3] Rec. Doc. 208.

[4] *See generally*, *id.* at 1–6.

[5] Rec. Doc. 208.

Owney, Evans Lewis, Gregory Stewart, Parnell Watts, and Darick Wallace remain as defendants. Trial is set for January 21, 2014.[6]

In addition to other charges deriving from the alleged conspiracy, the Fourth Superseding Indictment charges Lewis and Stewart with violations of 18 U.S.C. § 924(c), (j) for allegedly using firearms in relation to the conspiracy to cause the murder of Gregory Keys.[7] Kendrick Smothers, a victim of the attack that led to Keys's death, told police that he and Keys were meeting Stewart to collect money from him when Lewis opened fire on Smothers, hitting Smothers in the face. Smothers told police that both Lewis and Stewart fired upon him and Keys before fleeing the scene.

Lewis filed the pending motion to sever his trial from that of Stewart on August 21, 2013.[8] On August 27, 2013, the Court granted Stewart's motion to adopt Lewis's motion to sever.[9] The Government filed a response in opposition on September 18, 2013.[10] The Court held oral argument on September 26, 2013, during which the Court instructed the parties that they could file supplemental briefing. Both Defendants did so.[11] The Government did not.

## II. Parties' Arguments

### A. Lewis's Arguments in Support of Severance

Lewis argues that a joint trial will be prejudicial because he and Stewart will assert mutually

---

[6] Rec. Doc. 570.

[7] Rec. Doc. 208 at 5–6.

[8] Rec. Doc. 510.

[9] Rec. Doc. 522.

[10] Rec. Doc. 554.

[11] Rec. Docs. 587, 589.

antagonistic defenses.[12] Lewis asserts that he plans to "advance a reasonable doubt defense on the murder charge" and attack Smothers's testimony and identification as unreliable.[13] Lewis argues that Stewart's defense will be antagonistic to Lewis's defense. Stewart will concede that he was present at the shooting but state that he was unarmed.[14] Lewis also contends that Stewart will accuse Lewis of being the shooter.[15] Citing Fifth Circuit case law, Lewis argues that "the essence or core of Mr. Stewart's defense . . . cannot be simultaneously believed alongside Mr. Lewis's defense."[16] Finally, Lewis argues that Stewart's expected testimony that Lewis was the gunman "would not be available to the Government at a severed trial" and that the testimony, therefore, "unfairly augments the evidence to be presented against Mr. Lewis."[17]

### B. The Government's Arguments in Opposition

Noting that severance is a "drastic" remedy that is disfavored under Federal Rule of Criminal Procedure 14(a), the Government argues that "mutually antagonistic defenses are not prejudicial *per se*."[18] The Government notes that mutually antagonistic defenses require severance only if they force the jury to disbelieve one defendant in favor of the other.[19] Moreover, mutually antagonistic defenses must concern a defense's core or essence for severance to be proper.[20] Here, the Government argues

---

[12] Rec. Doc. 510-1 at 1.

[13] *Id.* at 3–4.

[14] *Id.* at 4.

[15] *Id.*

[16] *Id.* (citations and internal quotation marks omitted).

[17] *Id.* at 5.

[18] Rec. Doc. 552 at 4 (citing *Zafiro v. United States*, 506 U.S. 534, 538 (1993)).

[19] *Id.* at 5 (citing *United States v. Rocha*, 916 F.2d 219 (5th Cir. 1990)).

[20] *Id.* at 5 (citing *United States v. Daniels*, 281 F.3d 168, 177 (5th Cir. 2002)).

that Lewis's and Stewart's defenses do not require severance because "the core of each defense is not antagonistic to the other defense."  The Government explains that Stewart's defense is that he was not the shooter.[21] Lewis's defense is that the Government cannot prove he was the shooter. According to the Government, Stewart's purported defense "that Lewis was the shooter, along with another individual, is 'peripheral' to [Stewart's] defense" because a jury could believe that Stewart was not the shooter while also believing that the Government had not proven beyond a reasonable doubt that Lewis was the shooter.[22]

Moreover, the Government contends that severance is only appropriate where there is a serious risk that a joint trial might prejudice the jury.[23] Here, Lewis has not alleged that he will suffer prejudice sufficient to warrant severance.[24] Specifically, the Government asserts that Lewis's speculation that Stewart will accuse Lewis of being the shooter does not rise to the level of prejudice warranting severance.[25] Moreover, the Government contends that any potential prejudice arising from the joint trial of Lewis and Stewart can be avoided through the use of limiting instructions during and after trial.[26]

Finally, the Government believes that any prejudice to Lewis is outweighed by the particular circumstances of this case. Given that the trial is likely to lasts two weeks and involve 60 or more

---

[21] *Id.* at 7.

[22] *Id.*

[23] *Id.* at 8.

[24] *Id.*

[25] *Id.* at 9.

[26] *Id.* at 10.

witnesses, "[j]udicial economy calls for trying [the] co-conspirators together."[27] Stewart and Lewis are charged together in three counts. "Thus," the Government concludes, "to put on two separate trials will necessarily involve a duplication of significant resources . . . ."[28]

### C. Lewis's Supplemental Memorandum in Support of Motion to Sever

In his supplemental brief, Lewis reiterates his earlier arguments. Lewis intends to challenge Kendrick Smothers's testimony that he was a shooter.[29] Lewis's co-defendant, Stewart, will testify that Lewis and a third man were the shooters. Lewis's and Stewart's defenses are antagonistic because Lewis is claiming that the Smothers's testimony is unreliable while Stewart will confirm Smothers's story that Lewis participated in the shooting.  Lewis takes issue with the Government's dismissal of *United States v. Romanello*, in which the Fifth Circuit held that, "Severance may be required if only one defendant accuses the other, and the other denies any involvement."[30] Lewis maintains that *Romanello* is still controlling precedent because the Supreme Court decision in *Zafiro v. United States* had no impact on *Romanello's* holding.[31]

Lewis also contends that a joint trial will undermine his constitutional rights, specifically his right to present an independent defense, his right to the presumption of innocence, and his right to remain silent.[32] A joint trial, Lewis explains, will provide the Government with evidence in the form of Stewart's testimony. The Government would not have this evidence if separate trials were held.

---

[27] *Id.* at 11 (citing *United States v. Aucoin*, 390 F. App'x 336, 344 (5th Cir. 2010)).

[28] *Id.*

[29] Rec. Doc. 589 at 2.

[30] *Id.* (quoting 726 F.2d 173, 177 (5th Cir. 1984)).

[31] *Id.* at 2–3.

[32] *Id.* at 4–5.

Stewart's testimony will also threaten Lewis's Fifth Amendment right to remain silent because Stewart's testimony that Lewis was a shooter will force Lewis either to remain silent in the face of serious accusations or to take the stand himself.[33] Finally, in a joint trial, Stewart will act as a second prosecutor, and his testimony that Lewis was one of the shooters will reduce the Government's burden to prove Lewis guilty beyond a reasonable doubt.[34]

Most importantly, Lewis contends that the likelihood of prejudice from a joint trial is significantly higher in this case than other cases because the Government's case against him rests on the word of a single witness of questionable credibility.[35] The Government's case would be far weaker if Lewis was tried alone because the Government would only have Smothers to testify, rather than Smothers and Stewart. Thus, the prejudice here, if measured by reference to the strength of the Government's case if separate trials were held, is substantial[36]

In rebuttal, Lewis argues that jury instructions cannot cure the prejudicial effect of a joint trial.[37] Even if the jury disbelieved Smothers's testimony that Lewis was one of the shooters, it could accept Stewart's testimony that Lewis was the shooter.[38] Lewis maintains that this is one of those cases where "the prejudice . . . will simply be immune to instructions."[39]

Finally, Lewis asserts that the Government has exaggerated the impact separate trials would

---

[33] *Id.* at 5.

[34] *Id.* at 4.

[35] *Id.* at 5–6.

[36] *Id.* at 6.

[37] *Id.* at 7.

[38] *Id.*

[39] *Id.*

have on judicial economy. He further asserts that this factor is less important than preventing prejudice to a defendant's trial rights.[40]

### D. Stewart's Supplemental Memorandum in Support of Motion to Sever

In his supplemental brief, Stewart asserts that a joint trial will lessen the government's burden of proof against Stewart because Lewis will serve as a second prosecutor. According to Stewart, Lewis will claim that he was not at the scene of the crime at all, making it more likely that Stewart was the shooter.[41] Stewart's claim is that he was present but unarmed. Due to their contradictory versions of events, "no rational jury could acquit both" Stewart and Lewis, thereby compromising the right of both to a complete defense.[42]

Additionally, Stewart argues that a joint trial would compel him to present a defense and to testify, both of which he has a right to not do.[43] Stewart argues that Lewis's defense theory, which will almost certainly come out in opening statements, will compel him to present his own defense to rebut Lewis's theory.[44] In severed trials, Stewart notes that he would face no such pressure.[45] If nothing else, Lewis's defense that he was not at the scene of the shooting would shift the burden of proof to Stewart to establish that Lewis was, in fact, there and shot Keys.[46] Thus, a joint trial would impose an improper burden on Stewart that would not arise in a severed trial.[47]

---

[40] *Id.* at 8.

[41] Rec. Doc. 589 at 2.

[42] *Id.* at 3.

[43] *Id.* at 3–4.

[44] *Id.*

[45] *Id.* at 3.

[46] *Id.* at 4.

[47] *Id.* at 4.

### III. Law and Analysis

**A. *Law Applicable to Motions for Severance***

Under Federal Rule of Criminal Procedure 14(a), "if a joint trial would prejudice a defendant, district courts may sever the defendants' trials."[48] Generally, a court can prevent any prejudice arising from a joint trial through the use of limiting instructions but "Rule 14 leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion."[49]

The Fifth Circuit has "articulated a stringent standard" for finding prejudice in cases of mutually antagonistic defenses.[50] The defenses must be "so diametrically opposed that the jury, in order to believe the core of testimony offered on behalf of one defendant, must necessarily disbelieve the testimony offered on behalf of his co-defendant."[51] Moreover, the presence of antagonism that goes to the heart of the defenses is not a bright-line test but one factor in a multi-factor test that "take[s] into account the public interests in judicial economy and the administration of justice served by joint trials and the possibility that limiting instructions or other less drastic measures will suffice to cure any risk of prejudice."[52]

**B. *Whether the Purported Defenses of Lewis and Stewart are Antagonistic, and So If They are Tried Together They will be Prejudiced***

Defendants rely on *United States v. Romanello* for the proposition that "[s]everance may be

---

[48] Fed. R. of Crim. Pro. 14(a)

[49] *Daniels*, 281 F.3d at 177 (citation omitted).

[50] *Id.* (citing *Zafiro v. United States*, 506 U.S. 534 (1993)).

[51] *Id.*

[52] *Id.* (citing *Zafiro*, 506 U.S. at 538–39).

required if only one defendant accuses the other, and the other denies any involvement."[53] *Romanello* involved the trial of three co-defendants regarding a stolen set of suitcases filled with gold chains. Travelers at a Houston airport entrusted the suitcases to one of the co-defendants, an airline employee named Vertucci.[54] Vertucci then took the suitcases away from the airport, purportedly for safekeeping at another terminal, where, as he explained to police, he was robbed by two men.[55] After Vertucci gave police a description of the robbers, officers found and arrested the two men. Ultimately, Vertucci and his two supposed robbers were indicted and tried together as participants in a jewelry-theft conspiracy premised on a sham robbery.[56] None of the men testified at trial, but Vertucci's counsel claimed during argument that the co-defendants had robbed Vertucci.[57]

The Fifth Circuit reversed all three convictions, holding that Vertucci's core defense was his "contention that he was not involved in the criminal conspiracy and that he lacked the requisite criminal intent."[58] On the other hand, the co-defendants' "core" theory was that they were not involved in the scheme, were not present at the airport at any relevant time, and did not know the gold they were found with in their car was actually stolen.[59] Thus, the co-defendants argued "that Vertucci's story was a lie invented by the real gold smugglers" while Vertucci's defense was that

---

[53] *Id.* (citing 726 F.2d 173, 177 (5th Cir. 1984)).

[54] 726 F.2d at 174.

[55] *Id.* at 175.

[56] *Id.*

[57] *Id.* at 177.

[58] *Id.* at 176.

[59] *Id.*

he had a valid excuse for the gold's disappearance.[60]

The Fifth Circuit, therefore, held that "these defenses are irreconcilable and mutually exclusive" because if the jury believed that the co-defendants robbed Vertucci, then it necessarily had to find that the two men were not "innocent shippers" of gold.[61] Likewise, if the jury decided to believe the co-defendants' theory, then it could not have determined that the two men robbed Vertucci, whose "defense would cave in."[62] The Fifth Circuit noted that "[t]he real question for a court in considering a severance motion is not how convincing a defendant's evidence is, but whether the core of his defense directly implicates the co-defendant."[63]

Here, Stewart asserts that his defense is that he was unarmed at the scene and that he will accuse Lewis of being the shooter. In contrast, Lewis anticipates defending on the grounds that the Government lacks proof beyond a reasonable doubt that he was involved in the shooting. Stewart's defense, assuming it turns out to be as Lewis describes, therefore would directly implicate Lewis.

The Government argues that *Romanello* has since been discredited by both Fifth Circuit and Supreme Court precedent. In particular, the Government contends that *Zafiro v. United States*[64] has altered the overall analysis of mutual antagonistic defenses and that *United States v. Daniels*, a post-*Zafiro* Fifth Circuit decision,[65] is more applicable to the facts at issue here.

*Zafiro* involved a drug-trafficking conspiracy with four defendants.[66] The district court

---

[60] *Id.*

[61] *Id.* at 177.

[62] *Id.*

[63] *Id.* at 179.

[64] 506 U.S. 534 (1993)

[65] 281 F.3d 168 (5th Cir. 2002).

[66] 506 U.S. at 535.

denied severance, which was sought by two defendants on the grounds that their defenses were mutually antagonistic.[67] These two co-defendants were caught carrying a box filled with 55 pounds of cocaine.[68] One of the men, Alfonso Soto, claimed ignorance of the box's contents. He testified that that he was unaware of the drug conspiracy and claimed that he had merely given Garcia a box upon Garcia's request.[69] Garcia did not testify, but his lawyer argued that Garcia was innocent because the box belonged to Soto and because Garcia did not know what was in it.[70]

The Supreme Court affirmed the convictions. Moreover, it rejected the co-defendants' theory that "when two defendants both claim they are innocent and each accuses the other of the crime, a jury will conclude (1) that both defendants are lying and convict them both on that basis, or (2) that at least one of the two must be guilty without regard to whether the Government has proved its case beyond a reasonable doubt."[71]

Meanwhile, *Daniels* involved the convictions of three prison guards who beat an inmate at a Louisiana state prison.[72] The guards were tried together before a jury, and one of the guards, who was charged only with encouraging the attack rather than directly participating in it, testified. That guard testified that he saw his co-defendants attacking the inmate and that their brutality so shocked him that he was "paralyzed into inaction."[73] The Fifth Circuit found that the "core" of this guard's

---

[67] *Id.* at 536.

[68] *Id.* at 535–36.

[69] *Id.* at 536.

[70] *Id.*

[71] *Zafiro*, 506 U.S. at 540–41.

[72] 281 F.3d at 172.

[73] *Id.* at 176.

defense "was effectively that he did not *willfully* permit the deprivation" of the inmate's rights.[74] As to the other two guards, the Fifth Circuit noted that they did not testify and that the "core" of their defenses amounted to a reasonable doubt defense.[75]

The three defendants had been tried together, over several motions for severance, and argued on appeal that the joint trial was prejudicial because the three guards raised "mutually antagonistic and irreconcilable" defenses.[76] The Fifth Circuit rejected that argument, reasoning that the jury could have believed the defense of the guard who testified that he was paralyzed from acting in the face of the attack while also choosing to disbelieve that he had correctly identified the inmate's assailants.[77] The Fifth Circuit thus found it "arguable at best that the defenses in this case were mutually antagonistic."[78]

The Government argues that the "core" of Stewart's defense is not that Lewis committed the murder as much as it is that Stewart did not commit it. However, these facts are distinguishable from those in *Daniels*. There is no "paralyzed into inaction" defense available to either Stewart or Lewis. The prison guard who testified in *Daniels* was, as a lieutenant, charged specifically with "willfully permit[ting]" other prison officers to unlawfully assault the inmate.[79] Moreover, the lieutenant was *not* charged in the actual assault of the inmate; that charge was leveled only at two of the lieutenant's subordinates.[80] Here, both Stewart and Lewis are charged with the affirmative act of killing Keys.

---

[74] *Id.*

[75] *Id.* at 176–77.

[76] *See id.* at 176.

[77] *Id.* at 177.

[78] *Id.*

[79] *Daniels*, 281 F.3d at 173.

[80] *Id.*

Furthermore, under the *Daniels* standard, severance would be proper in this case. *Daniels* explained that mutually antagonistic defenses will be so prejudicial as to necessitate severance when they are "so diametrically opposed that the jury . . . must necessarily disbelieve the testimony offered on behalf of his co-defendant."[81]

Here, the Court finds that Stewart claims his defense is that he was not the shooter but that he was at the scene unarmed and that Lewis and another person were there and were the shooters. Lewis's defense is that Smothers's identification of him is unreliable; hence, if tried separately a jury could either conclude that he was not there or if he was there, that he was not the shooter. The "core" defenses of Stewart and Lewis necessarily require the jury to believe only one or the other defendant. Therefore, it is clear to this Court that trying these two defendants together will be prejudicial to their constitutional rights.

The Government's argument that severance would be inconsistent with *Zafiro* is also misplaced. While *Zafiro* states that "[m]utally antagonistic defenses are not prejudicial *per se*," the case still instructs that a district court should grant severance when "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."[82] This is a fact-specific inquiry, and "the risk of prejudice will vary with the facts in each case."[83] Furthermore, as Justice Stevens pointed out in his concurring opinion, the defenses at issue in *Zafiro* were antagonistic but not "truly irreconcilable," and he cautioned against the application of *Zafiro* to a situation in which "mutually exclusive defenses transform a trial into more of a contest between the defendants than between the

---

[81] *Daniels*, 281 F.3d at 177.

[82] *Zafiro*, 506 U.S. at 538–39.

[83] *Id.* at 539.

13

people and the defendants."[84]

The Government contends that regardless of what Defendants say their defenses will look like now, it is possible, and even perhaps likely, that they will later change their minds.[85] However, the Court finds that this is an argument with little merit, as the Government marshals no evidence suggesting that Defendants will elect to use other defenses.

### C. Whether Prejudice is Outweighed by the Interests of Judicial Economy and the Court's Ability to Impose Less Drastic Measures

Additionally, Lewis and Stewart must establish that the resulting prejudice of a joint trial outweighs the interests of judicial economy.[86] In *United States v. Matthews*, the Fifth Circuit upheld the convictions of co-defendants who had asserted mutually antagonistic defenses, reasoning that under *Zafiro*, "[s]everance is not automatically required when co-defendants present mutually antagonistic defenses . . . even if prejudice is shown."[87] Rather, the court has discretion as to the remedy needed to ensure a fair trial for defendants.[88] In *Matthews*, a pair of co-defendants were jointly tried for carjacking.[89] Each defendant accused the other of shooting the vehicle's owner, and each claimed he was acting innocently while the other did the shooting.[90] Accepting for argument's sake that the defenses were mutually antagonistic, the Fifth Circuit determined that the district

---

[84] *Id.* at 543 (Stevens, J. concurring).

[85] Rec. Doc. 552 at 2.

[86] *See, e.g., Daniels*, 281 F.3d at 177 (Even if assertion of mutually antagonistic defenses risks prejudice, "the district court should take into account the public interests in judicial economy and the administration of justice served by joint trials and the possibility that limiting instructions or other less drastic measures [than severance] will suffice to cure any risk of prejudice.").

[87] 178 F.3d 295, 299 (5th Cir. 1999) (citing *Zafiro*, 506 U.S. at 538–39).

[88] *Id.*

[89] 178 F.3d at 297.

[90] *Id.* at 297–98.

14

court's "limiting instructions were sufficient to cure any prejudice."[91]

The Government argues that such instructions would be sufficient here because they would mitigate any prejudicial impact of either Lewis's or Stewart's defenses on the other. Lewis and Stewart, for their part, see instructions here as ineffective against the backdrop of predictable prejudice and confusion by the jury. The Court agrees. The Court finds that its ability to provide a limiting instruction in this case will not likely be sufficient to mitigate the prejudice to the co-defendants.[92]

Given the strong possibility of prejudice, the tremendous stakes involved for both the Defendants and the public, a joint trial offers little advantage in this case. Rather, judicial economy is outweighed by the stricture of a fair trial.

---

[91] *Id.* at 299.

[92] *See Zafiro*, 506 U.S. 534, 539 (noting severance is proper where the risk of prejudice is high and, in court's discretion, less drastic measures will not suffice to cure risk of prejudice.)

Individual trials in this case afford the best opportunity to balance efficiency against fairness and to render a verdict perceived as legitimate. Accordingly, the Court will grant Defendants' motion to sever.

### IV. Conclusion

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Motion to Sever[93] is **GRANTED**.

**NEW ORLEANS, LOUISIANA**, this <u>16th</u> day of December, 2013.

*Nannette Jolivette Brown*

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[93] Rec. Doc 510